UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

J&S COMMUNITY PHARMACY INC, an
Illinois corporation,

          Plaintiff,

v.

PRIME THERAPEUTICS LLC, a Delaware
Limited Liability Company; WALGREEN CO.,
HEALTH CARE SERIVCE CORPORATION,
BLUECROSS and BLUESHIELD OF ILLINOIS,
Illinois corporations, U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES, and ILLINOIS
DEPARTMENT OF HEALTHCARE AND FAMILY
SERVICES,

          Defendants.

Case No. 1:17-cv-6837

---

## COMPLAINT FOR INJUNCTION AND DAMAGES

The Plaintiff, J&S Community Pharmacy Inc. ("Pharmacy"), by and through its attorney M. James Salem, seeks statutory, compensatory and punitive damages, as well as injunctive relief against the above-named Defendants for antitrust laws violation, Sherman Act, 15 U.S.C. §§ 1 & 2. Damages are not sought against government defendants, but only against Defendants Prime Therapeutics LLC ("Prime"), Walgreen Company ("Walgreens") and Health Care Service Corporation ("HCSC"), not only for antitrust laws violations, but also for tortious interference with business relations, conversion, fraud in the inducement and conspiracy. Plaintiff also seeks an order permanently enjoining Prime from terminating the Pharmacy's participation in Prime's provider network, which includes Medicare, Medicaid and Blue Cross & Blue Shield.

## NATURE OF THE ACTION

1. Plaintiff Pharmacy is located in a low-income community mainly dependent on government subsidies like Medicaid and Medicare. Many of the Pharmacy's customers are elderly individuals who are within walking distance of the Pharmacy. An audit by Prime led to terminating the Pharmacy's participation in Prime's provider network, scheduled on September 21, 2017. Prime sent a letter to the Pharmacy's customers that it will be terminating its participation in the prescription drug plans for BlueCross and BlueShield of Illinois, HHS's Medicare and HFS's Medicaid. About 75% of the Pharmacy's customers use Medicaid, Medicare and Blue Cross and Blue Shield of Illinois.

2. The market product at issue is prescription drugs and the relevant geographic area is a few-block radius from the Pharmacy or the Chicago area. The nearest pharmacies to the Plaintiff Pharmacy, who is its competitor, includes Walgreens, which is *not* within walking distance for the Pharmacy's customers.

3. On August 29, 2016, Prime entered into a "partnership" with Walgreens to "help it capture a greater share of the prescription-drug market and better compete with CVS Health Inc.," see **Exhibit B**. Shutting down the Plaintiff Pharmacy in this case, or terminating its participation in Medicare Medicaid and Blue Cross & Blue Shield, will provide a greater share of the prescription-drug market for Prime and Walgreens. There is no means by which Prime can increase Walgreens' market share, other than shutting down competitors, which terminating their participation from Medicare, Medicaid and Blue Cross & Blue Shield will surely do.

4. **Exhibit C** is Prime's website showing that it is a Pharmacy, and **Exhibit D** is a Better Business Review, with Complaints about Prime that reveals Prime "is a mail order

2

pharmacy that opened in April of 2004.  The BBB has reviewed complaints against the company involving problems and billing issues." See first page of **Exhibit D**.  **Exhibit E** shows Prime's ownership interest with Walgreens in "a combined central specialty pharmacy and mail services company," that directly competes with Plaintiff.  Thus, not only does Prime's partner Walgreens compete directly with Plaintiff, but also Prime itself competes by being a mail order pharmacy, selling prescription-drugs through the mail, and by ownership in a joint venture with Walgreens, see **Exhibit E**.

      5. The Defendant BlueCross and BlueShield of Illinois is a division of Health Care Service Corporation (both shall be referred to as "HCSC"), Defendant U.S. Department of Health and Human Services ("HHS") is a federal government agency that regulates Medicare, and Defendant Illinois Department of Healthcare and Family Services ("HFS"), administers the Medicaid Program in Illinois.  All these Defendants entered into a contract with Prime to administer their prescription drug plans and to conduct audits of participating pharmacies, including the Plaintiff Pharmacy herein.

      6.  The contract that Prime has with HCSC, HHS and HFS violates the Sherman Act, Section 1 & 2, because it gives Prime, together with its partner Walgreens, the discretion and the authority to terminate Plaintiff's participation in the prescription drug insurance plan.  The contract gives Walgreens and Prime the ability to terminate their competitor, the Plaintiff' Pharmacy, participation in the prescription drug market for all customers who have insurance plans with HCSC, HHS's Medicare and HFS's Medicaid in the five-block area surrounding the Plaintiff Pharmacy, as well as in the Chicago market area.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over the subject matter of this action. Plaintiff bring this action, under the Sherman Act, 15 U.S.C. § 1 & 2, and 15 U.S.C. §§ 15, 26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation).

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all state law claims. Venue in the Northern District of Illinois is based on Plaintiff' state of incorporation and where both the Plaintiff and Defendants are doing business, under 28 U.S.C. § 1391.

## THE PARTIES

9. Plaintiff, J&S Community Pharmacy Inc., is an Illinois corporation, with its principal place of business in Chicago, Illinois. It is a retail business that sells prescription drugs at: 743 South Pulaski Road, Chicago, IL 60624; NCPDP: 1475246

10. Defendant Prime is a Delaware company with its principal place of business in Eagan, Minnesota. Prime is owned by 13 BlueCross and BlueShield companies, one of which is BlueCross and BlueShield of Illinois, which provides prescription drug insurance for the Pharmacy's customers.

11. Defendant Walgreens is an Illinois corporation with its principal place of business in Deerfield, Illinois.

12. Defendant Health Care Service Corporation ("HCSC"), a company authorized to conduct business in Illinois, with its principal place of business in Chicago, Illinois, and BlueCross and BlueShield of Illinois is a division of HCSC doing business in Illinois.

4

13. U.S. Department of Health and Human Services ("HHS") is a federal government agency that regulates Medicare.

14. Illinois Department of Healthcare and Family Services ("HFS") is an Illinois state government agency that administers the Medicaid Program in Illinois.

## STATEMENT OF FACTS

15. The Plaintiff Pharmacy is a family owned and operated business, which serve the community in providing affordable prescription drugs. It is a low-income community mainly dependent on government subsidies like Medicaid and Medicare.

16. The Defendant Prime, which is owned by HCSC, is a private and independent pharmacy benefit management ("PBM") company that manages coverage for medicine for health insurance companies. It processes the insurance claims of the Plaintiff' Pharmacy and submits them to Medicaid, Medicare and Blue Cross and Blue Shield of Illinois.

17. In 2016, Prime conducted an audit of the Pharmacy where for the first time a discrepancy was allegedly found. Initially, Prime sent a letter, dated April 28, 2017, to the Pharmacy telling it that as a result of the audit, it owed $39,638.91, plus $5,628.45 in Medicare Part D, which constitutes a 2% annual error rate. The Pharmacy objected to this determination and appealed it.

18. Prime denied the appeal despite the fact that the Pharmacy purchased drugs from Dik Drug Inc., 160 Tower Dr., Burr Ridge, IL 60527, which is a pharmacy that was purchased by Cardinal Drugs, and did not receive copies of invoices from Dik Drugs in the sale. There were creams that Patel purchased from another Pharmacy: J&P Pharmacy Inc., 1516 Madison Street, Maywood, IL 60153, were no invoices were provided. Also,

the Pharmacy purchased prescription drugs from VIP Pharmaceuticals, 3000 Alternate Blvd., Grand Island, New York, which shutdown in 2016 and it could not provide copies of invoices. Given these undisputable facts, together with a 2% annual error rate, and the fact no other PBM terminated the participation of other pharmacies, then Prime had an ulterior motive to terminate the Pharmacy's participation, which was to reduce the competition for its partner Walgreens and itself as a mail-order prescription drug seller.

19. Prime interfered with the Pharmacy's business by sending letters to its customers who have, as their health insurance carries, Blue Cross & Blue Shield, Medicare and Medicaid. The letter informed them that the Pharmacy will not accept their insurance starting September 21, 2017, and to find another pharmacy, with a nearby Walgreens pharmacy address.

20. Ultimately, Prime wrongfully took $39,638.91, plus $5,628.45, from the insurance claims the Pharmacy submitted, without the Pharmacy's consent. Prime took this money on the basis of its own unilateral determination that the Pharmacy breached the contract and that its audit was accurate. However, there was no court ruling of a breach of contract and there was no legal basis cited by Prime to permit it to seize the Pharmacy's money. In fact, *there is no contract between Prime and the Pharmacy* that would permit Prime to seize the money. Even if there was a contract, then as a matter of law, Prime did not have the legal authority to simply take money that belongs to the Pharmacy based on its interpretation of the Agreement - a court would first have to determine that there was a breach of contract. However, there is no such Agreement or contract between Prime and the Pharmacy. Prime wrongfully took this money, which is a significant amount that would typically shut down a small pharmacy like the Plaintiff's. This was a

concerted effort to shut down the Pharmacy without the need to terminate it from Prime's provider network.

21. The Pharmacy never admitted to any wrongdoing and never consented to allowing Prime to take any money belonging to it. It is for the courts to interpret and enforce contracts and not Prime. Whether a contract exists, or is legally enforceable or whether it was breached is not for a private party on its own to determine. Prime committed conversion in taking the money from Plaintiff' Pharmacy.

22. Irreparable harm to the Pharmacy and its customers and the livelihood of the family that owns the Pharmacy depends on the Pharmacy. **Exhibit A**, are Affidavits of customers, who are too poor or physically or mentally weak to travel to another Pharmacy for their medicine.

## ANTITRUST ALLEGATIONS

23. Prime is in "partnership" with Walgreens to "help it capture a greater share of the prescription-drug market and better compete with CVS Health Inc.," see **Exhibit B.** There is no means by which Prime can increase Walgreens' market share, other than shutting down competitors. Prime "is a mail order pharmacy," and in a joint venture with Walgreens in the prescription-drug market, which is in direct competition with Plaintiff, see **Exhibits D & E**. Thus, for all intents and purposes and as a matter of law, Prime and Walgreens as general partners, are acting as one company and bind each other to any liability either one incurs.

24. Defendants engaged in a concerted effort to unreasonably restrain trade and competition in violation of the Sherman Act, 15 U.S.C. § 1 & 2, *et seq*., under the rule of reason, or any intermediate standard, Defendant's conduct is a transparently unreasonable

and an unlawful restraint of trade and competition. In that, the contractual agreement that Prime has with HCSC, HHS and HFS violates the Sherman Act, Section 1 & 2, because it gives Prime, together with its partner Walgreens, the discretion and the authority to terminate Plaintiff' participation in the prescription drug plans. The contract gives Walgreens and Prime the ability to terminate their competitor, the Plaintiff' Pharmacy, participation in the prescription drug market for all customers who have insurance plans with HCSC, HHS's Medicare and HFS's Medicaid in the few-block area surrounding the Plaintiff' Pharmacy, as well as in the Chicago market area.

25. It is understandable how Prime obtained a contract with HCSC - HCSC owns Prime. However, upon information and belief, Prime obtained the Medicare and Medicaid contracts through what has been referred to as "legal bribery." In that, Prime and HCSC, as well as the 13 BlueCross and BlueShield in other states who are Members of Prime Therapeutics LLC, provide campaign contributions to politicians to secure these contracts that clearly benefits Prime and Walgreens over their competitors, such as the Plaintiff herein.

26. As partners, Prime and Walgreens both compete with the Plaintiff Pharmacy directly within the few-block area where Plaintiff is located and both compete with Plaintiff through Prime's mail-ordering service. By reducing Plaintiff' market share of prescription drugs, you increase both Walgreens and Prime's market share. In fact, upon information and belief, Prime has terminated other small mom-and-pop pharmacies in the Chicago area to the benefit of nearby Walgreens.

27. Upon information and belief, Prime is the only PBM so far that has termi-

nated small mom-and-pop pharmacies' participation in its provider network in the Chicago area. Other PBMs are watching to see if Prime succeeds in terminating competitive pharmacies' participation in prescription drug plans because, there should be no doubt, that if the Defendants prevail in this action, then all other PBMs will do the same to increase their market share and to financially benefit their owners, who are also large health insurance companies with deep pockets - in violation of antitrust laws.

## INTERSTATE COMMERCE

28. The provision and sale of many of the pharmaceutical services and products, and coverage for such services and products under group and individual health plans related to Plaintiff and its suppliers, are each in, and affect, interstate commerce. Many of the activities of the Parties, in administering and processing the prescription drug benefits for customers and health plans in every state are in the regular, continuous, and substantial flow of interstate commerce, and have a substantial effect upon interstate commerce.

## **DAMAGES**

29. Defendant Prime has caused damages by causing letters to go out to customers to change their pharmacy. The fact that many customers have not done so in the past two months is evidence of their inability to travel to Walgreens or travel to any other pharmacy. See attached hereto as **Exhibit A**, Affidavits of the customers who cannot change pharmacy and who will suffer both physically and mentally if Prime is not enjoined from terminating the Pharmacy's participation in Prime's provider network. In addition, the family that owns the Pharmacy will lose its livelihood.

30. The collusion in this action is among Prime, Walgreens and the owner of Prime, HCSC. They have committed these wrongful acts, in violation of antitrust laws

and for financial gains. In addition to Plaintiff' compensatory damages and attorney's fees against Defendant, jointly and severally, punitive damages should be awarded in the amount of $1.5 Billion Dollars ($1,500,000,000.00) against the three Defendants Prime, Walgreens and HCSC, jointly and severally, to deter these Defendants and others who are similarly situated, with similar financial status, such as the other PBMs who are waiting to see the results of this action.

31. Evidence exists and will be presented to a jury to show that $1.5 Billion Dollars in punitive damages is proportional to the assets and income of the Defendants Prime, Walgreens and HCSC. In that, it is a reasonable amount that will serve to actually punish them and deter them and other PBMs and their owners, who are also in similar financial status, from taking a chance in attempting to shut down another mom-and-pop pharmacy.

**FIRST CAUSE OF ACTION**
**ANTITRUST VIOLATION, Sherman Act 15 U.S.C. § 1 & 2**

32. Plaintiff repeat paragraphs 1 through 31 as stated herein.

33. Defendants engaged in unlawful conduct by restraining competition in violation of the Sherman Act, 15 U.S.C. § 1 & 2.

34. Prime wrongfully terminated Plaintiff Pharmacy's participation in Prime's provider network to help its partner the nearby pharmacy Walgreens "capture a greater share of the prescription-drug market and better compete with CVS Health Inc.," **Exhibit B**.

35. In addition, Prime is a direct competitor with Plaintiff in that it is a mail order pharmacy, selling prescription-drugs through the mail, and by ownership in a joint venture with Walgreens, **Exhibit C, D & E**.

36. The termination was a pretext to increase Prime's and its partner Walgreens' share of prescription-drug market, and increase its own share of the prescription-drug market by owning a joint venture pharmacy with Walgreens and having a mail order service. This results in anticompetitive and antitrust injury to Plaintiff and also a violation of the Sherman Act, 15 U.S.C. § 1 & 2, under a quick-look and rule of reason standard. This termination results in reduced competition.

37. What enables Prime and Walgreens to take Plaintiff' share of the prescription drug market is the contract Prime has with HCSC, HHS and HFS. These contracts violate the Sherman Act, Section 1 & 2, because it gives Prime, together with its partner Walgreens, the discretion and the authority to terminate Plaintiff' participation in the prescription drug insurance plans. The contract gives Walgreens and Prime the ability to terminate their competitor, the Plaintiff Pharmacy, from participating in the prescription drug market for all customers who have insurance plans with HCSC, BlueCross and BlueShield of Illinois, HHS's Medicare and HFS's Medicaid within the five-block area surrounding the Plaintiff Pharmacy, as well as in the Chicago market area.

38. **WHEREFORE,** Plaintiff prays for the following relief:

a) that an injunctive relief be granted by enjoining the Defendant Prime from terminating the Plaintiff' Pharmacy from participation in the Prime's Provider Network, pursuant to 15 U.S.C. § 26;

b) awarding compensatory damages against Defendants in an amount determined at trial;

c) awarding three (3) times actual damages against Defendants pursuant to Section 4 of the Clayton Act, 15 U.S.C.S. § 15, which provides that "any person who

shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue" for treble damages, prejudgment interest, and costs of suit, including attorney fees;

d) awarding Plaintiff 1.5 Billion Dollars ($1,500,000,000.00) in punitive damages against Prime, Walgreens and HCSC, jointly and severally, to deter these Defendants and others who are similarly situated with similar financial status, such as other PBM's and their owners, for their intentional acts to injure Plaintiff;

e) an order awarding reasonable attorney's fees, costs, and 5% statutory pre-judgment interest and costs of suit;

f) together with such other relief that this Court deems just and proper.

## SECOND CAUSE OF ACTION
## AGAINST PRIME, WALGREENS & HCSC
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS[1]

39. Plaintiff repeat paragraphs 1 through 31 as stated herein.

40. Defendant Prime caused a direct contact with Plaintiff' customers to notify them that they must purchase their medicine from a new Pharmacy as of September 21, 2017.

41. Prime also contacted Medicaid, Medicare and Blue Cross and Blue Shield causing a termination of business relations with Plaintiff as of September 21, 2017.

---

[1] Under Illinois law, the elements of a claim for tortious interference with prospective economic advantage or business relationship are: (1) the existence of a valid business relationship or expectancy; (2) the defendant's knowledge of Plaintiff' relationship or expectancy; (3) an intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; and (4) damages to Plaintiff resulting from such interference. Anderson v. Vanden Dorpel, 172 Ill.2d 399, 406-07 (Ill. 1996).

42. Plaintiff has a reasonable expectancy of a valid business relationship with its customers, **Exhibit A**, and the third parties, Medicaid, Medicare and Blue Cross and Blue Shield.

43. Defendant Prime knew of the business relationship Plaintiff has with its customers and said third parties, as well as the prospective business relationship.

44. Defendant Prime intentionally interfered with the Plaintiff' current and prospective business relationship by causing a contact with Plaintiff' customers and the termination of Plaintiff' participation in the Prime Provider Network, where this was the interference that caused damages to the Plaintiff.

45. **WHEREFORE,** Plaintiff prays for the following relief against Prime and its partner Walgreens and HCSC:

a) awarding compensatory damages in an amount to be determined at trial;

b) awarding Plaintiff 1.5 Billion Dollars ($1,500,000,000.00) in punitive damages against Prime, Walgreens and HCSC, jointly and severally, to deter these Defendants and others who are similarly situated with similar financial status, such as other PBM's and their owners, for their intentional acts to injure Plaintiff;

c) an order awarding reasonable attorney's fees, costs, and 5% statutory pre-judgment interest and costs of suit;

d) together with such other relief that this Court deems just and proper.

### THIRD CAUSE OF ACTION
### AGAINST PRIME, WALGREENS & HCSC
### CONVERSION

46. Plaintiff repeat paragraphs 1 through 31 as stated herein.

47. Defendant Prime wrongfully took $39,638.91, plus $5,628.45 from Plaintiff' insurance claims without the Plaintiff' consent. This money belongs to Plaintiff for the prescription drugs it sold.

48. Prime took this money on the basis of its own unilateral determination that the Pharmacy breached a contract and that its audit of overdue money was accurate.

49. There was no court ruling of a breach of contract, there was no contract and there was no legal basis cited by Prime to take possession of the Plaintiff' money. Thus, it was taken via by conversion.

50. Plaintiff demanded a return of its money by telephone and in writing through counsel, but Prime refused.

51. **WHEREFORE,** Plaintiff prays for the following relief against Prime and its partner Walgreens and HCSC:

a) awarding compensatory damages in an amount to be determined at trial;

b) awarding Plaintiff 1.5 Billion Dollars ($1,500,000,000.00) in punitive damages against Prime, Walgreens and HCSC, jointly and severally, to deter these Defendants and others who are similarly situated with similar financial status, such as other PBM's and their owners, for their intentional acts to injure Plaintiff;

c) an order awarding reasonable attorney's fees, costs, and 5% statutory pre-judgment interest and costs of suit;

d) together with such other relief that this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### AGAINST PRIME
### DECLARATORY and INJUNCTIVE RELIEF

52. Plaintiff repeat paragraphs 1 through 31 as stated herein.

53. Plaintiff have sustained, and will continue to sustain, irreparable injuries caused by Prime's conduct set forth herein.

54. Plaintiff are likely to succeed on the merits of its claim against Prime. Plaintiff is, therefore, entitled to a permanent injunction, pursuant to 15 U.S.C. § 26.

55. **WHEREFORE,** Plaintiff prays for the following relief Prime:

a) that the injunctive relief be granted by enjoining the Defendant Prime from terminating the Plaintiff' Pharmacy from participation in the Prime's Provider Network, pursuant to 15 U.S.C. § 26;

b) together with such other and further relief this Court deems just and proper.

**JURY TRIAL IS DEMANDED**

Dated: September 21, 2017

Respectfully submitted,

/s/M. James Salem,
Attorney for Plaintiff
Law Office of Salem & Associates
7156 West 127th Street, B-149
Palos Heights, IL. 60463
Tel. (708) 277-4775
salemlaw@comcast.net